## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 24-** |
| **v.** | : | **DATE FILED:** |
| **LARRY LEONARD** | : | **VIOLATIONS:** |
| **NATHANIEL LEONARD** | | **18 U.S.C. § 371 (conspiracy to** |
| | : | **transport and sell stolen goods in** |
| | | **interstate commerce – 1 count)** |
| | : | **18 U.S.C. § 2314 (interstate** |
| | | **transportation of stolen property –** |
| | : | **1 count)** |
| | | **18 U.S.C. § 1957 (money** |
| | : | **laundering – 3 counts)** |
| | | **18 U.S.C. § 2 (aiding and abetting)** |
| | : | **Notice of forfeiture** |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

### BACKGROUND

At various times relevant to the indictment:

1.      K&A Money Loan Pawnbrokers ("K&A") was a business located in

Philadelphia, Pennsylvania, which held itself out as a pawn shop. The business' registration

information filed with the Pennsylvania Department of State lists the owners as defendants

LARRY LEONARD and NATHANIEL LEONARD. Despite holding itself out as a pawnshop

and despite having received a pawn license in or around December 2004, K&A had not been

licensed as a pawnshop with the city of Philadelphia since on or about February 28, 2020.

2.      Society Hill Loan was a business located in Philadelphia, Pennsylvania,

which held itself out as a pawn shop. The business' registration information with the

Pennsylvania Department of State lists the "President" and "Secretary" as defendant LARRY LEONARD, and the "Treasurer" as defendant NATHANIEL LEONARD. Despite holding itself out as a pawnshop and despite having received a pawn license in or about April 2014, Society Hill Loan had not been licensed as a pawnshop with the city of Philadelphia since on or about April 28, 2019.

3.　　　Lou's Jewelry and Pawnshop ("Lou's Jewelry") was a business located in Wilmington, Delaware, which was a licensed pawn shop under Delaware state law. The registration information listed defendant LARRY LEONARD as the "principal" and "President."

4.　　　Delaware state law and Philadelphia County law required pawn shops to be licensed, and both required licensed pawn shops to use an electronic reporting system—which could be accessed by law enforcement—to record every piece of merchandise they purchase from customers. At times relevant to this indictment, Delaware and Philadelphia required pawn shops to report their purchases through the LeadsOnline system ("LEADS").

5.　　　Defendant LARRY LEONARD controlled the day-to-day operations of K&A and oversaw the day-to-day operations of Lou's Jewelry.

6.　　　Defendant NATHANIEL LEONARD, who was the cousin of defendant LARRY LEONARD, controlled the day-to-day operations of Society Hill Loan.

7.　　　Mathew Goldstein and Tina Flood, charged elsewhere, were employees of Lou's Jewelry.

8.　　　Person No. 1, charged elsewhere, was an employee of K&A.

2

9.      The Home Depot, Inc. was a retail business chain specializing in home improvement tools and merchandise, which operated numerous retail outlets in the Eastern District of Pennsylvania and the District of Delaware, and elsewhere.

10.     Lowe's Companies, Inc. was a retail business chain specializing in home improvement tools and merchandise, which operated numerous retail outlets in the Eastern District of Pennsylvania and the District of Delaware, and elsewhere.

11.     The Target Corporation was a retail department store business chain, which operated numerous retail outlets in the Eastern District of Pennsylvania and the District of Delaware, and elsewhere.

12.     Walmart, Inc. was a retail department store business chain, which operated numerous retail outlets in the Eastern District of Pennsylvania and the District of Delaware, and elsewhere.

13.     Best Buy Co. Inc. was a retail home electronics chain, which operated numerous retail outlets in the Eastern District of Pennsylvania and the District of Delaware, and elsewhere.

14.     CVS Pharmacy, Inc. was a retail pharmacy and drugstore chain, which operated numerous retail outlets in the Eastern District of Pennsylvania and the District of Delaware, and elsewhere.

15.     Rite Aid was a retail pharmacy and drugstore chain, which operated numerous retail outlets in the Eastern District of Pennsylvania and the District of Delaware, and elsewhere.

16.     Safeway, Inc. was a retail supermarket chain, which operated numerous retail outlets in the Eastern District of Pennsylvania and the District of Delaware, and elsewhere.

17.     Persons (known colloquially as "boosters") collectively stole millions of dollars of new retail merchandise from retailers in the Philadelphia and Delaware region, and elsewhere, including from The Home Depot, Lowe's, Target, Walmart, Best Buy, CVS, Rite Aid, Safeway, and others, which the "boosters" then sold to K&A, Society Hill Loan, and Lou's Jewelry (collectively, the "Pawn Shops") for cash.

18.     Person No. 2, Person No. 3, Person No. 4, all known to the grand jury, and other persons (collectively referred to   by defendants LARRY LEONARD and NATHANIEL LEONARD as well as by Mathew Goldstein, Tina Flood, Person No. 1, and other employees of the Pawn Shops as "mooks") collectively stole millions of dollars of new retail merchandise from across the United States, which the "mooks" then resold in bulk quantities to defendants LARRY LEONARD and NATHANIEL LEONARD and other pawn shop employees for cash on a recurring basis.

19.     eBay was a multinational e-commerce company that facilitated consumer-to-consumer and business-to-consumer sales through its website, eBay.com.

20.     Defendant NATHANIEL LEONARD oversaw the operation of Society Hill Loan's online eBay site, which was registered to defendant NATHANIEL LEONARD's wife. Society Hill Loan's eBay site sold the same type of new, in-box merchandise offered for sale by legitimate area retailers—including power tools, personal electronics, computer equipment, and Lego building sets—except that Society Hill Loan's eBay site sold this merchandise for prices significantly below the prices offered by legitimate retailers. From in or

about January 2019 to in or about November 2023, Society Hill Loan's eBay site generated more than $19 million in sales.

       21.    Person No. 5, known to the grand jury, operated an online store based in the state of New York that sold new, in-box merchandise to consumers, including from on or about December 23, 2019, to on or about December 13, 2023. Person No. 5's online store sold the same type of new, in-box merchandise offered for sale by legitimate area retailers—including power tools, personal electronics, computer equipment, and Lego building sets—except that Person No. 5's online site sold this merchandise for prices significantly below the prices offered by legitimate retailers. During this time period, Person No. 5 purchased millions of dollars of new, stolen, in-box merchandise from defendant NATHANIEL LEONARD and other employees of Society Hill Loan, which defendant NATHANIEL LEONARD and other employees of Society Hill Loan shipped from Society Hill Loan in Philadelphia, Pennsylvania to Person No. 5 in New York, and which Person No. 5 then resold to his own customers.

### THE CONSPIRACY

      22.    From at least in or about April 2016 to at least on or about December 13, 2023, in the Eastern District of Pennsylvania and elsewhere, defendants

**LARRY LEONARD and**
**NATHANIEL LEONARD**

conspired and agreed together and with Mathew Goldstein, Tina Flood, and Person No. 1, each charged elsewhere, and Person No. 2, Person No. 3, and Person No 4, and others known and unknown to the grand jury, to commit offenses against the United States, that is: (i) to unlawfully transport in interstate commerce stolen retail goods and merchandise with a value of $5,000 or more, in violation of Title 18, United States Code, Section 2314; and (ii) to unlawfully sell in

5

interstate commerce stolen retail goods and merchandise with a value of $5,000 or more, in violation of Title 18, United States Code, Section 2315.

## MANNER AND MEANS

It was part of the conspiracy that:

23. At the direction of defendants LARRY LEONARD and NATHANIEL LEONARD, on a daily basis, during normal business hours, Mathew Goldstein, Tina Flood, and Person No. 1, and other employees of the Pawn Shops purchased numerous new, in-box retail merchandise items that they knew had been stolen from area retail stores by "boosters." The employees of the Pawn Shops purchased the merchandise in cash for prices that were a fraction of the legitimate retail value of this merchandise.

24. On a regular basis and during normal business hours, defendant LARRY LEONARD, Person No. 1, and other employees of K&A purchased bulk amounts of new, in-box retail merchandise that they knew had been stolen by Person No. 2, Person No. 3, Person No. 4, and other individuals who the employees (including defendant LARRY LEONARD) collectively referred to as "the mooks," and which stolen merchandise defendant LARRY LEONARD referred to as "mookage." Defendant LARRY LEONARD and the employees of K&A purchased the merchandise in cash for prices that were a fraction of the legitimate retail value of this merchandise.

25. On a regular basis and during normal business hours, defendant NATHANIEL LEONARD and other employees of Society Hill Loan purchased bulk amounts of new, in-box retail merchandise that they knew had been stolen from individuals who the employees (including defendants LARRY LEONARD and NATHANIEL LEONARD)

6

collectively referred to as "the mooks," and which stolen merchandise defendants LARRY

LEONARD and NATHANIEL LEONARD referred to as "mookage." Defendant NATHANIEL

LEONARD and employees of Society Hill Loan purchased the merchandise in cash for prices

that were a fraction of the legitimate retail value of this merchandise.

26.     On a regular basis, Person No. 2, Person No. 3, Person No. 4, and other

individuals known by the employees of the Pawn Shops as "mooks" mailed packages of new,

stolen, in-box retail merchandise to locations in Pennsylvania other than K&A, including to a

FedEx store in Philadelphia. These individuals then picked up the packages from these locations

and brought them to K&A, where defendant LARRY LEONARD, Person No. 1, and other

employees of K&A unpacked the merchandise and purchased it for a fraction of its retail value.

27.     At the direction of defendants LARRY LEONARD and NATHANIEL

LEONARD, Mathew Goldstein, Tina Flood, Person No. 1, and other employees of the Pawn

Shops failed to report every item of new, in-box merchandise that they purchased from

"boosters" and "the mooks" in the LEADS online reporting system, so that the law enforcement

agencies that monitor the LEADS database would not know the full extent of the large number of

items of new, stolen, in-box merchandise being purchased by the Pawn Shops.

28.     On a routine if not daily basis, Person No. 1 sent a text message to

defendant LARRY LEONARD that included, among other information, the total amount of cash

purchases of stolen good that had been made from "boosters" and" the "mooks" that day.

29.     On a routine if not daily basis, defendant LARRY LEONARD and

employees of the Pawn Shops loaded their vehicles with the new, stolen, in-box merchandise that

they had purchased at Lou's Jewelry in Delaware and then transported the merchandise to

Society Hill Loan in Philadelphia, Pennsylvania, where it was unloaded by defendants LARRY
LEONARD and NATHANIEL LEONARD and other employees of the Pawn Shops.

   30. On a routine if not daily basis, defendant LARRY LEONARD and
employees of the Pawn Shops loaded their vehicles with the new, stolen, in-box merchandise
purchased at K&A in Philadelphia and then transported the merchandise to Society Hill Loan.

   31. On a routine if not daily basis, defendants LARRY LEONARD and
NATHANIEL LEONARD and other employees of the Pawn Shops unloaded the new, stolen, in-
box merchandise that had been transported to Society Hill Loan from K&A in Philadelphia and
Lou's Jewelry in Delaware.

   32. On a routine if not daily basis, defendant NATHANIEL LEONARD and
other employees of the Pawn Shops photographed the new, stolen, in-box merchandise and then
listed the merchandise for sale to consumers and wholesalers on Society Hill Loan's eBay site.
At any given time during the conspiracy, Society Hill Loan's eBay site listed at least hundreds of
new, stolen, in-box merchandise that were available for purchase at prices below the legitimate
retail value.

   33. On a routine if not daily basis, defendant NATHANIEL LEONARD and
other employees of the Pawn Shops packaged the new, stolen, in-box merchandise that had been
purchased by eBay customers for shipment from Society Hill Loan in Philadelphia to locations
across the United States.

   34. On a routine if not daily basis, defendant NATHANIEL LEONARD and
other employees of the Pawn Shops caused the new, stolen, in-box merchandise that had been

purchased by eBay customers to be shipped from Society Hill Loan in Philadelphia to locations across the United States.

35.    On a routine basis, defendant NATHANIEL LEONARD and other employees of the Pawn Shops sold large volumes of new, stolen, in-box merchandise to Person No. 5 at prices significantly below the legitimate retail value of the merchandise.

36.    On a routine basis, defendant NATHANIEL LEONARD and other employees of the Pawn Shops in Philadelphia shipped large volumes of new, stolen, in-box merchandise to Person No. 5 in New York.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendants LARRY LEONARD and NATHANIEL LEONARD, along with Mathew Goldstein, Tina Flood, Person No. 1, Person No. 2, Person No. 3, Person No. 4, and others known and unknown to the grand jury, committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.    On or about April 28, 2019, defendants LARRY LEONARD and NATHANIEL LEONARD caused Society Hill Loan to fail to renew its pawn shop license with the city of Philadelphia.

2.    On or about September 28, 2019:

a.    With the knowledge, consent, and assistance of defendant LARRY LEONARD, Person No. 1 at K&A purchased a large volume of new, stolen, in-box merchandise from the "boosters" as well as individuals known collectively as "the mooks."

9

      b.      Person No. 1 sent a text message to defendant LARRY LEONARD containing a photograph of nine large, full, black trash bags intermixed with in-box, apparently new Milwaukee brand power tools and told defendant LARRY LEONARD that defendant NATHANIEL LEONARD would come to pick up the goods; Person No. 1 then advised defendant LARRY LEONARD, "And told him [defendant NATHANIEL LEONARD] to bring a car that will have room! That's 10k sitting there."

      c.      Person No.1 sent a text message to defendant LARRY LEONARD indicating that K&A had made $9,910 worth of cash purchases that day.

      3.      On or about November 23, 2019:

      a.      Defendant LARRY LEONARD texted defendant NATHANIEL LEONARD, "Did you go to ka [K&A] to get your $ and The mookage?"

      b.      In response to defendant LARRY LEONARD's text as described in the previous subparagraph, defendant NATHANIEL LEONARD replied, "Yes."

      4.      On or about December 21, 2019:

      a.      Defendant LARRY LEONARD exchanged text messages with Person No. 1 in which they discussed the cash purchase of tens of thousands of dollars of new, stolen, in-box merchandise that day from "the mooks," which stolen goods were referred to as "mookage."

      b.      Person No. 1 sent a text message to defendant LARRY LEONARD indicating that K&A had made $60,138 in cash purchases that day.

      5.      On or about February 28, 2020, defendant LARRY LEONARD caused K&A to fail to renew its pawn shop license with the city of Philadelphia.

6.    On or about November 14, 2020:

a.    Defendant NATHANIEL LEONARD texted defendant LARRY LEONARD photographs of new, in-box merchandise he had displayed for purchase at Society Hill Loan, each bearing a sales price listed on a post-it note.

b.    In response to defendant NATHANIEL LEONARD's text as described in the previous subparagraph, defendant LARRY LEONARD offered to "get you better signs than post its too" but then corrected himself by texting, "I can't do that as the mooks would see my price structure."

7.    On or about October 16, 2021:

a.    Defendants LARRY LEONARD and NATHANIEL LEONARD exchanged text messages about defendant LARRY LEONARD needing defendant NATHANIEL LEONARD's truck to make a "run" to Lou's Jewelry in Delaware.

b.    Defendant NATHANIEL LEONARD texted defendant LARRY LEONARD to ask if "all 3 of your guys come in today," which defendant NATHANIEL LEONARD also referred to as "three mooks," to which defendant LARRY LEONARD responded, "No We had two more coming on Monday. And two loads from de. Get your rest. Sorry."

8.    On or about December 28, 2021:

a.    Person No. 1 texted defendant LARRY LEONARD descriptions and photographs of dozens of new, stolen, in-box merchandise that she had purchased that day

from "the mooks," including numerous wireless earbuds, headphones, and Intel Core computer processors.

        b.      Person No. 1 sent a text message to defendant LARRY LEONARD indicating that K&A had made $50,845 worth of cash purchases that day.

        c.      Defendant LARRY LEONARD, Mathew Goldstein, and Person No. 1 exchanged text messages regarding the number and timing of trips necessary to transport the merchandise from K&A to Society Hill Loan on the following day,

        d.      Defendant NATHANIEL LEONARD exchanged text messages with Person No. 5 regarding a "large order" coming into Society Hill Loan the following day.

        9.      On or about January 11, 2022, defendant NATHANIEL LEONARD texted Person No. 5 a handwritten invoice for $11,618, dated December 30, 2021, for dozens of items of electronic merchandise, including Intel Core computer processors.

        10.      On or about May 16, 2022:

        a.      Defendant LARRY LEONARD and Person No. 1 exchanged text messages whereby they discussed the cash purchase of thousands of dollars of new, stolen, in-box merchandise from Person No. 3, Person No. 4, and Person No. 5.

        b.      Defendant LARRY LEONARD exchanged text messages with Person No. 1 regarding the transportation of the new, stolen, in-box merchandise purchased from Person No. 3, Person No. 4, and Person No. 5, during which defendant LARRY LEONARD mused, "Not Sure [sic] I like an open bed vehicle transporting these goods."

        c.      Person No. 1 sent a text message to defendant LARRY LEONARD indicating that K&A had made $29,867 in cash purchases that day.

11.     On or about September 17, 2022, Person No. 3 stole numerous electronic retail merchandise, including Logitech webcams and Bose audio sunglasses, from a Best Buy store in Lancaster, Pennsylvania, before travelling to Ohio.

12.     From on or about September 18, 2022, to September 20, 2022, Person No. 3 travelled to Indiana and back to Ohio before returning to Philadelphia, Pennsylvania.

13.     On or about September 20, 2022, Person No. 1 sent a text message to defendant LARRY LEONARD indicating that K&A had made $8,460 in cash purchases that day.

14.     On or about September 21, 2022:

a.      Defendant NATHANIEL LEONARD caused Society Hill Loan's eBay account to list for sale a pair of Bose audio sunglasses.

b.      Defendant NATHANIEL LEONARD texted Person No. 5 several handwritten invoices totaling $6,711 for dozens of items of electronic merchandise, including at least 20 Logitech webcams.

15.     On or about October 10, 2022:

a.      Person No. 1 sent a text message to defendant LARRY LEONARD indicating that K&A had already purchased more than $21,000 of new, stolen, in-box merchandise that day and that more purchases would be made because Person No. 4 "is here now."

b.      In response to Person No. 1's text as described in the previous subparagraph, defendant LARRY LEONARD responded, "Ok. I will have [Mathew Goldstein] come in the am."

13

     c.     Person No. 1 sent a text message to defendant LARRY

LEONARD indicating that K&A had made $30,395 in cash purchases that day.

     16.     On or about December 9, 2022:

     a.     Person No. 3 sent a text message to Person No. 1 indicating that he

had "23k" of new, stolen, in-box merchandise to sell to K&A, and after which Person No. 3 said

that he would be returning to Philadelphia that night and would come to K&A the following

morning.

     b.     Person No. 1 took a screen shot of her text message conversation

with Person No. 3, described in the previous subparagraph, and texted it to defendant LARRY

LEONARD, who responded, "K [okay]."

     c.     Person No. 3 travelled from Ohio to Philadelphia, Pennsylvania

with approximately $23,000 of new, stolen, in-box merchandise from retail stores in Ohio,

Michigan, Illinois, and Missouri on or about December 3, 2022 through on or about December 9,

2022.

     17.     On or about December 10, 2022, the day after the text exchanges

described above in Overt Act No. 16:

     a.     Person No. 3 visited K&A and sold a large volume of new, stolen,

in-box merchandise to Person No. 1.

     b.     Person No. 1 sent a text message to defendant LARRY

LEONARD indicating that K&A had made $25,110 in cash purchases that day.

     18.     On or about March 10, 2023, Person No. 3 stole numerous items of

electronic retail merchandise, including Bose and Sony headphones and computer hard drives,

from a Best Buy store in New Hampshire.

19.    On or about Saturday, March 11, 2023, Person No. 3 travelled to Massachusetts before returning to Philadelphia, Pennsylvania.

20.    On or about Monday, March 13, 2023:

a.    Person No. 3 entered K&A carrying a large duffel bag full of new, stolen, in-box merchandise.

b.    Person No. 3 sold a large volume of new, stolen, in-box merchandise to K&A employees.

c.    Defendant LARRY LEONARD and other K&A employees loaded defendant LARRY LEONARD's car with a large chest and multiple trash bags containing new, stolen, in-box merchandise, along with other new, stolen, in-box merchandise.

d.    Defendant LARRY LEONARD drove his car from K&A to Society Hill Loan, where he and other Society Hill Loan employees unloaded the new, stolen, in-box merchandise and took it into Society Hill Loan.

e.    Person No. 1 sent a text message to defendant LARRY LEONARD indicating that K&A had made $15,117 in cash purchases that day.

21.    On or about March 20, 2023, defendant NATHANIEL LEONARD texted Person No. 5 a number of handwritten invoices totaling approximately $31,606 for over one hundred pieces of new, stolen, in-box merchandise.

22.    On or about November 7, 2023:

a.    Mathew Goldstein drove his vehicle from Lou's Jewelry in Delaware to Society Hill Loan in Philadelphia loaded with new, stolen, in-box merchandise,

which employees of Society Hill Loan helped him unload and carry into Society Hill Loan.

    b.  Defendant LARRY LEONARD and a K&A employee loaded a vehicle full of new, stolen, in-box merchandise at K&A after which the K&A employee drove the merchandise to Society Hill Loan, where the merchandise was unloaded and taken into Society Hill Loan.

    c.  The K&A employee described in the previous subparagraph drove the vehicle from Society Hill Loan in Philadelphia to Lou's Jewelry in Delaware, where Mathew Goldstein, Tina Flood, and another Lou's Jewelry employee loaded the vehicle with new, stolen, in-box merchandise.

    d.  The K&A employee described in the previous subparagraph drove the vehicle full of new, stolen, in-box merchandise from Lou's Jewelry in Delaware back to Society Hill Loan in Philadelphia, where defendant NATHANIEL LEONARD and other Society Hill Loan employees unloaded the merchandise and brought it into Society Hill Loan.

    23.  On or about November 9, 2023, defendant LARRY LEONARD texted defendant NATHANIEL LEONARD and Mathew Goldstein to set up a dinner at which to discuss the impact of a new Delaware state law that prohibited Delaware pawn shops including Lou's Jewelry from purchasing new, in-box retail merchandise unless the individual offering the merchandise for sale could produce a receipt or proof of purchase.

    24.  On or about November 10, 2023, Society Hill Loan's eBay account listed approximately 1,369 items for sale, of which approximately 1,311 were listed as being in "brand new" or "new (other)" condition.

25.    On or about November 13, 2023, defendants LARRY LEONARD and NATHANIEL LEONARD along with Mathew Goldstein met for dinner in Philadelphia and discussed the impact of a new Delaware state law that prohibited Lou's Jewelry from purchasing new, in-box retail merchandise unless the individual offering the merchandise for sale could produce a receipt or proof of purchase, during which defendant LARRY LEONARD instructed Mathew Goldstein to redirect the "regular" Lou's Jewelry customers who sold Lou's Jewelry new, stolen, in-box merchandise to K&A or Society Hill Loan in Philadelphia.

26.    On or about December 13, 2023:

a.    Defendants LARRY LEONARD and NATHANIEL LEONARD along with Mathew Goldstein, Tina Flood, and other employees of the Pawn Shops were storing a large volume of new, stolen, in-box merchandise at Lou's Jewelry for delivery to Society Hill Loan.

b.    Defendants LARRY LEONARD and NATHANIEL LEONARD along with other employees of the Pawn Shops were storing a large volume of new, stolen, in-box merchandise at Society Hill Loan for sale to their customers including via Society Hill Loan's eBay site.

All in violation of Title 18, United States Code, Section 371.

17

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.     Paragraphs 1 through 21, and 23, 27 through 29, and 31 through 36, and

Overt Acts 1, 4, 6 through 9, 14, and 21 through 26 of Count One are incorporated here.

        2.     From in or about April 2016 to at least on or about December 13, 2023, in

the Eastern District of Pennsylvania and the District of Delaware, and elsewhere, defendants

**LARRY LEONARD and
NATHANIEL LEONARD**

and Mathew Goldstein and Tina Flood, charged elsewhere, along with others known and

unknown to the grand jury, unlawfully transported in interstate commerce from Lou's Jewelry,

located in Wilmington, Delaware, to Society Hill Loan, located in Philadelphia, Pennsylvania,

goods and retail merchandise with a value in excess of $5,000, and aided and abetted the

transportation of such goods and merchandise, knowing the same to have been stolen, converted,

and taken by fraud.

        In violation of Title 18, United States Code, Sections 2314 and 2.

18

## COUNTS THREE THROUGH FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    Paragraphs 1 through 21, and 23 through 36, and Overt Acts 1 through 26 of Count One are incorporated here.

      2.    On or about the dates set forth below, in the Eastern District of Pennsylvania and the District of Delaware, and elsewhere, defendant

### LARRY LEONARD

knowingly engaged and attempted to engage in monetary transactions listed below, each such transaction constituting a separate count, by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, described more fully below, and such property was derived from specified unlawful activities, that is: (1) criminal conspiracy to transport and sell stolen goods in interstate commerce, in violation of Title 18, United States Code, Sections 371, 2314, and 2315; and (2) transportation of stolen goods in interstate commerce, in violation of Title 18, United States Code, Section 2314.

| Count | Date | Amount | Description |
|-------|------|--------|-------------|
| 3 | December 16, 2022 | $47,384.72 | A payment of American Express invoice for period ending November 20, 2022, from Republic Bank account ending 6475 in the name of Society Hill Money Loan. |
| 4 | January 17, 2023 | $43,600.54 | A payment of American Express invoice for period ending December 21, 2022, from Republic Bank account ending 6475 in the name of Society Hill Money Loan. |
| 5 | April 17, 2023 | $44,235.15 | A payment of American Express invoice for period ending March 21, 2023, from Republic Bank account ending 6475 in the name of Society Hill Money Loan. |

All in violation of Title 18, United States Code, Section 1957.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    As a result of the violations of Title 18, United States Code, Section 2314,

and conspiracy to commit such offense, set forth in this indictment, defendants

### LARRY LEONARD and
### NATHANIEL LEONARD

shall forfeit to the United States of America any property, real or personal, that constitutes or is

derived from proceeds traceable to the commission of such violations, including, but not limited

to, the sum of $23,000,000.

2.    If any of the property subject to forfeiture, as a result of any act or

omission of the defendant(s):

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with, a third party;

        (c)    has been placed beyond the jurisdiction of the Court;

        (d)    has been substantially diminished in value; or

        (e)    has been commingled with other property which cannot be divided

            without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant(s) up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United

States Code, Section 981(a)(1)(C).

**A TRUE BILL:**

_Christine & Ayus for_

**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

21

No._ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

LARRY LEONARD
and
NATHANIEL LEONARD

INDICTMENT

Counts

18 U.S.C. § 371 (conspiracy to transport and sell stolen goods in
interstate commerce – 1 count)
18 U.S.C. § 2314 (interstate transportation of stolen property – 1 count)
18 U.S.C. § 1957 (money laundering – 3 counts)
18 U.S.C. § 2 (aiding and abetting)
Notice of Forfeiture

A true bill.



_____ day.